**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Keana Taylor<br>Plaintiff,<br><br>v.<br><br>OffersPDQ, LLC, *et al.*,<br>Defendants. | **Civil Action No. 4:23-cv-3018**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATIONS OF**
**THE TELEPHONE CONSUMER PROTECTION ACT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Keana Taylor ("Plaintiff") files this Amended Complaint for, *inter alia,* violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 (the "TCPA") and provisions of the Texas Business and Commercial Code relating to telemarketing abuse, including TBCC §302.101 (the "TBCC"), against the Partnerships, Individuals, and Unincorporated Associations identified in the contemporaneously filed *Affidavit of Keana T. Taylor In Support Of Her Complaint* (collectively the "Defendants"), and would respectfully show the Court as follows:

**PARTIES**
**Plaintiff**

1. Keana Taylor ("Plaintiff") is a natural person residing in Houston, Texas, within this judicial district.
2. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).
3. Like many other people, Plaintiff receives a multitude of unwanted telemarketing solicitations in the form of phone calls and text messages. This Complaint is based on the phone calls and text messages identified in the contemporaneously filed *Declaration of Keana T. Taylor In*

*Support Of Her Complaint* (the "Taylor Decl.") and all attachments thereto, including but not limited to Schedule A ("Schedule A"). All references to "Exhibits" or "Ex." in this Complaint refer to the Exhibits to the Taylor Decl.

4. The Taylor Decl., Schedule A and each of the factual allegations detailed therein, are hereby incorporated by reference into this Complaint.

5. Plaintiff is a residential telephone subscriber. Her telephone number is not associated with a business. Her cellular telephone number has been on the National Do Not Call Registry since June 28, 2006, Ex. 1. Plaintiff's telephone number is also on the Texas Do Not Call list. Ex. 2.

**Defendants**

6. Upon information and belief, each of the telemarketing communications identified in Schedule A was initiated by a partnership, individual, or unincorporated association. Each of those partnerships, individuals, or unincorporated associations are hereby named as a Defendant to the claims in this Complaint (collectively, the "Defendants"). Defendants are "persons" as that term is defined by 47 U.S.C. § 153(39). All communications from the same number(s) are believed to be from the same Defendant. Thus, for example, the multiple communications received from telephone number 210-194-7209 are believed to all originate from the same Defendant; rather than from 4 Defendants.

7. First named Defendant OffersPDQ, LLC is a legal entity having an address at 7901 Research Forest Drive, Suite 400, Spring, Texas 77382-1482. OffersPDQ's registered agent is InCorp Services, Inc., at 815 Brazos St., Suite 500, Austin, Texas 78701. OffersPDQ's "Company Manager" is BTB Capitol Group, LLC, of 1910 Thomes Ave., Cheyenne, Wyoming 82001.

8. For certain Defendants listed on Schedule A, if entities, partnerships, individuals, or unincorporated associations are listed in association with said Defendant ("Additional Persons"), those Additional Persons are, on information and belief, "officer(s), agent(s), or other person(s) acting for or employed by" said Defendant. And, on information and belief, those Additional Persons are responsible for actions or omissions in furtherance of the unsolicited telemarketing communications complained of herein, and did so within the scope of their employment or agency relationship with Defendants. Thus, any Additional Persons so listed are Defendants in their own right and are included in the definition of Defendants to this Complaint. *See* 47 U.S.C. §217, *see also Spurlark v. Dimension Service Corporation et al,* 2022 WL 2528098 (S.D. Ohio 2022).

9. Because the Defendants are engaging in illegal telephone solicitation and telemarketing practices, they desire to avoid responsibility and liability for their actions, and engage in practices such as using false names or otherwise fraudulently identifying themselves, "spoofing" or otherwise obfuscating telephone Caller ID information, lying about their employers or other relationships, and other practices intended to obfuscate their true legal identities and those of other responsible parties.

10. As a result, it is difficult and sometimes impossible, without the benefit of legal discovery (including subpoenas to telecommunications service providers) to identify the persons legally responsible for specific telemarketing events. Plaintiff has investigated, and continues to investigate, to the best of Plaintiff's ability, identifying information concerning the communications identified in Schedule A. In certain instances where identifying information has been obtained, it is provided in Schedule A.

11. The information provided in Schedule A is true and accurate to the best of Plaintiff's knowledge. Schedule A identifies information relating to one or more telemarketing communication(s) received from the Defendants.

12. On information and belief, the above named Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, representatives, and/or other persons, who will be identified upon a reasonable opportunity for discovery and, pursuant to 47 U.S.C. §217, any such officer(s), agent(s), or other persons so identified in the future are also Defendants.

**JURISDICTION & VENUE**

13. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. In *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012), the United States Supreme Court confirmed that federal district courts have subject matter jurisdiction to hear private civil suits under the TCPA.

14. This Court has supplemental subject-matter jurisdiction pursuant to 28 U.S.C. § 1367 over the TBCC and/or other state claims asserted herein, because they arise from the same set of facts as the TCPA claims, specifically the unsolicited and unlawful telemarketing communications listed in Schedule A.

15. This Court may properly exercise personal jurisdiction over each of the Defendants on the claims asserted herein, because each Defendant purposefully and directly targets business activities towards the Plaintiff, an individual in the state of Texas, and causes harm to Plaintiff within this judicial district.

16. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this suit occurred in this Judicial District.

**DEFENDANTS' UNLAWFUL CONDUCT**

17. On information and belief, Plaintiff has received more than one telephone call (including text messages) within a 12-month period, by or on behalf of each of the Defendants, in violation of the regulations prescribed under 47 U.S.C. § 227 and regulations promulgated thereunder, by each of the Defendants identified in Schedule A.

18. Each communication identified in Schedule A identifies at least one unsolicited call placed, or text message sent by a Defendant, to Plaintiff on her personal cellular telephone ending in 6404. Each of those calls or text messages was purposefully directed to Plaintiff in an effort to sell Plaintiff goods or services, e.g., real estate brokering services, health insurance coverage, solar assessments, or same day cash loans. Schedule A.

19. Where Schedule A, on their faces, identify two communications from the same number or entity, those communications constitute "more than one telephone call" as required by 47 U.S.C. §227(c)(5).

20. However, it is common knowledge – and the experience of Plaintiff - that telemarketers frequently obfuscate their Caller ID information, use fake names, lie about the entities behind the calls, change phone numbers, and repeatedly call the same number in an effort to avoid being held responsible for making "more than one telephone call." As an example, after obtaining discovery in another case, Plaintiff recently discovered that one telemarketer had contacted her at least seven times using different pseudonyms and different phone numbers. Plaintiff plausibly believes that this is a common practice amongst telemarketers engaged in illegal telephone solicitations. Thus, on information and belief, where Schedule A does not

identify two communications from the same number or entity, Plaintiff alleges that each such entity has still made "more than one telephone call" to her because one or more otherwise unattributed or anonymous phone calls (or text messages) were also made by that same Defendant and, upon a reasonable opportunity for discovery, the commonality between the identities of calling (or texting) parties will be made clear.

21. On information and belief, Plaintiff has no established business relationship with any of the Defendants and has never sought information on goods or services from them. Plaintiff never provided her telephone number to any of the Defendants identified in her Complaint, and never consented to receive the calls or texts.

22. These calls and texts were not made for "emergency purposes," but rather for telemarketing purposes.

23. On each occasion in which Plaintiff received a telephone call, Plaintiff answered the call, said "Hello," and then heard either a lengthy pause or delay and/or a pre-recorded voice before anyone came on the line, indicating to her that the call was made using an autodial a/k/a an "ATDS."

24. In certain cases involving calls or text messages, Plaintiff was prompted to take an action or press a button to "unsubscribe" or be taken off calling lists. Frequently, Plaintiff's name and/or address information is presented in text messages using ALL CAPITAL LETTERS. These features also indicate that the call or text message was made using an ATDS.

25. When Plaintiff spoke with a live individual, she was solicited for services or products for which she never agreed to receive solicitation calls.

26. Upon information and belief, each of the phone calls and text messages that Plaintiff received were sent using an ATDS used to send massive numbers of unsolicited text messages and

phone calls to residential and/or cell phone owners. On information and belief, Defendants' autodialers store lists of telephone numbers to be called (or to send text messages to) and uses a random or sequential number generator to determine the dialing or texting order of the calls. On information and belief, these lists of numbers stored are acquired or purchased from a third party selling "leads" – a/k/a numbers gathered or scraped from public sources such as property recording offices. On information and belief, Defendants' autodialers store the "leads" into a database, and generate either random or sequential numbers to indicate the calling order for the leads. Sequential numbers would be used to dial the numbers for the "leads" in the order they are stored in the database, or in another order determined by the specific programming of the autodialer system. Random numbers would be used to dial the numbers for the "leads" in a shuffled dialing order. The system can then dial the phone numbers that were stored in the database using either the random or sequential number generated. On information and belief, when Defendants gather additional information about Plaintiff – for example that she answered a call, or received or responded to a text message, this information is noted on her file within the ATDS. Plaintiff is presently unaware of the precise technical details of Defendants' various autodialer systems, however upon a reasonable opportunity for discovery expects to be able to discover the same. *See Scherrer v. FTP Operating Co., LLC*, 2023 WL 4660089 (D. Colo. July 20, 2023).

27. The phone calls and text messages that Plaintiff received from one or more of the Defendants made solicitations which Plaintiff never requested or consented to receive, including real estate brokering services, obtaining unspecified Medicare or Medicaid services, warranties, loans, offered solar power assessments or loans, and generally solicited Plaintiff's purchase of other product(s) and/or service(s).

28. It is common knowledge – and Plaintiff's experience – that makers of unsolicited telemarketing calls or text messages, including those listed in Schedule A, commonly attempt to obfuscate the true nature or purpose of the contact. This deception could take several forms, including telling the target that the caller is merely "taking a survey," and then after asking a couple of survey questions, offering to sell something. Alternately, the caller may attempt to deceive the recipient by pretending to be offering to "buy" something, where in fact the caller is actually attempting to sell services. In many instances, the caller asks Plaintiff if she is "interested in an all cash offer on her property" or some similar – but false – enticement.

29. With respect to each of the contacts listed on Schedule A, the unsolicited telemarketing calls and text messages were, in substance and in effect if not on their face, solicitations to sell goods or services – including but not limited to real estate transactional services clothed as "offers" to buy real estate or solicitations for information. *See, e.g.* Ex.3, pages 53-54 (multiple text messages from "Cruz," each from the same number (707) 353-4609, soliciting real estate brokering services) (excerpted below):




30. In essence, the Defendants making such calls or text messages are acting like a real estate agent or broker, who takes a fee for facilitating the transfer of real property from one party to another. To sell property, one or both parties to the sale must pay certain transaction costs (legal, recording, title insurance, &c.) If Plaintiff were to positively respond to Defendants' communications, Defendants would – like any real estate agent – perform services such as researching a value or price of the property, arranging for title and escrow services to be provided, and facilitating and assisting with the marketing and/or legal aspects of the home sale, such as preparing a real estate purchase contract, finding a buyer (if the property is to be immediately sold on), and facilitating the transfer of title. If Plaintiff were to allow Defendants to perform these services, Plaintiff would pay for the services (whether Plaintiff knew it or not) through the Defendants' payment of a reduced purchase price for the property. *See, e.g. Pepper v. GVG Capital LLC d/b/a WeBuy-Homes-4Cash.org,* Civ. Action No. 4:22-cv-2912-LHR (S.D.TX. June 9, 2023).

31. The Defendants, desirous of avoiding detection and liability for their illegal and unsolicited telemarketing, engage in practices designed to obfuscate their identities, those of their employees, and confuse the recipient about the true nature of the call. In doing so, Defendants violate provisions of the Telemarketing Sales Rule, as amended in 2015. *See* *https://www.ftc.gov/business-guidance/resources/complying-telemarketing-sales-rule*.

32. On information and belief, each and every phone company used by the Defendants has available Caller ID services with the capacity to transmit both an actual phone number of the Defendant, and the name of the telemarketer. Further, on information and belief, Defendants have not taken "all available steps to ensure transmission of Caller ID information in every call." This is because, Defendants do not want call recipients such as Plaintiff to know who they are, or Plaintiff would ignore or block the calls.

33. On information and belief, Defendants' telephone agents use fictitious names in their communications, but do not keep employee records sufficient to trace each fictitious name to specific employees.

34. On information and belief, each and every Defendant fails to promptly provide clear and conspicuous disclosures of material information regarding the good(s) and/or service(s) solicited. For example, Defendants fail to promptly, clearly, and conspicuously, disclose the identity of the entity behind the solicitation.

35. The actions described herein were in violation of the TCPA and the Texas Business and Commercial Code.

**COUNT I**
**DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(B)**

36. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

37. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

38. Defendants each initiated one or more telephone calls and/or texts to Plaintiff's cellular telephone number using an automatic telephone dialing system.

39. Defendants' calls and texts were not made for "emergency purposes."

40. Defendants' calls and texts to Plaintiff's cellular telephone were made without any prior express consent.

41. Plaintiff never sought information, products, or services pertaining to the communications listed in Schedule A; *e.g.*, buying or selling properties, obtaining health insurance, requesting solar assessments, or same day cash loans.

42. Plaintiff never provided her telephone number to any of the Defendants, and never consented to receive the calls or texts.

43. Defendants each contacted Plaintiff despite the fact that Plaintiff has been on the Do Not Call Registry since June 28, 2006.

44. Defendants' acts as described above each were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

45. The acts and/or omissions of each of the Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

46. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual, and treble damages.

**COUNT II**
**DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(C)**

47. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.
48. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).
49. Defendants each contacted Plaintiff more than once despite the fact that Plaintiff has been on the Do Not Call Registry since June 28, 2006.
50. Defendants' acts as described above each were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.
51. The acts and/or omissions of each Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.
52. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

**COUNT III**
**DEFENDANTS VIOLATED § 302.101 OF**
**THE TEXAS BUSINESS AND COMMERCIAL CODE**

53. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

54. Those Defendants who made voice phone calls to Plaintiff, specifically including those Defendants whose calls appear in Schedule A are listed as a "call" (the "TBCC Defendants"), each violated § 302.101 of the Texas Business & Commercial Code when its representatives engaged in continuous and repetitive telephone solicitation of Plaintiff without obtaining a registration certificate from the Office of the Secretary of State. §302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation.

55. §302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

56. Furthermore, §302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees.

**COUNT IV**
**DEFENDANT'S UNSOLICITED TEXT MESSAGES**
**CONSTITUTE A NUISANCE**

57. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

58. Defendants' unrestricted and unsolicited text messages constitute a nuisance as to Plaintiff as that cause of action is interpreted by the Fifth Circuit Court of Appeals in *Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686 (2021).

59. Defendants' unsolicited text messages interfered with Plaintiff's use of her cell phone and trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone.

60. Defendants' unsolicited text messages consumed Plaintiff's cell phone battery life, consumed minutes and text message allocated to Plaintiff by her cell phone provider, and takes up storage space in her phone's memory.

61. Defendants' multiple unsolicited, aggravating, and annoying text messages trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone.

62. With respect to those Defendants who have previously been sued by Plaintiff for violations analogous to those described herein, their continued violation of the statutes recited herein, even after Plaintiff's prior suits against them evidence their wanton and reckless disregard for the harms caused and violations of the law.

**COUNT V**
**DEFENDANT'S UNSOLICITED TEXT MESSAGES**
**CONSTITUTE AN INVASION OF PLAINTIFF'S PRIVACY**

63. Defendants' multiple unrestricted and unsolicited calls and text messages constitute an invasion of Plaintiff's privacy as that cause of action is interpreted by the Fifth Circuit Court of Appeals in *Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686 (2021).

64. Each of Defendants' multiple unlawful text messages and/or telephone calls sent to constitutes an invasion of Plaintiff's privacy.

65. Defendant's aggravating and annoying text messages trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line and intruded upon Plaintiff's seclusion.

66. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd 559 ¶ 7 (Jan. 4, 2008). Defendant's text message calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using a portion of the

service period allocated to Plaintiff by her cellular telephone service provider. See *Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686 (5th Cir. 2021).

67. Upon information and belief, each Defendant has a corporate policy of sending text messages using an ATDS in order to market and/or advertise Defendant's services to individuals such as Plaintiff without first gaining express written consent to send such messages.

68. The text messages make Plaintiff feel uncomfortable and targeted in a very personal and intrusive way.

69. The text messages are inappropriate and are the very type of injury that the TCPA sought to prevent.

**PRAYER FOR RELIEF**

For the reasons set forth above, Plaintiff prays that she have judgment against each Defendant to include at least the following:

a) All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A)) and §302.302 of the Texas Business and Commerce Code;

b) Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

c) Additional statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(C);

d) Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

e) Additional treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(C);

f) Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c);

g) As for the TBCC Defendants, statutory damages of $5,000 per violation (as provided under §302.302(a) of the Texas Business & Commerce Code);

h) As for the TBCC Defendants, all reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to §302.302(a) of the Texas Business & Commerce Code;

i) As to all Defendants, attorney's fees and costs;

j) Pre-judgment interest at a rate of 10%, or the maximum rate allowed by law or this Court; and post-judgment interest at the maximum rate allowed by this Court as described at: https://www.txs.uscourts.gov/page/post-judgment-interest-rates, presently 5.34%;

k) All other relief which Plaintiff may show to be justly entitled or to which this Honorable Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Aug. 16, 2023

Respectfully Submitted,

*Keana T. Taylor*

Keana T. Taylor
Texas State Bar No: 24042013
Erik Dykema
New Jersey State Bar No: 021652010

**Upshaw PLLC**
914 E. 25th St.
Houston, Texas 77009
Telephone: 972-920-8000

## CERTIFICATE OF SERVICE

I hereby certify that today, August 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

*Keana T. Taylor*
Keana T. Taylor